UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,                          **DECISION AND ORDER**

             v.                                    6:21-CR-06151 EAW

RAQUON LEWIS,

             Defendant.

---

Defendant Raquon Lewis (hereinafter "Defendant") has filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). (Dkt. 25). For the reasons set forth below, the motion is denied.

I.    **BACKGROUND**

Pursuant to the terms and conditions of a plea agreement, on November 8, 2021, Defendant waived indictment and pleaded guilty to a two-count information charging possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) (count one), and being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count two). (Dkt. 8; Dkt. 9; Dkt. 10; Dkt. 11). According to the Presentence Investigation Report revised January 27, 2022 ("PSR"), on July 16, 2021, after several controlled purchases of cocaine from Defendant utilizing a confidential informant, law enforcement executed a search warrant at Defendant's residence. (Dkt. 18 at ¶ 33). Upon searching the residence, where minor children were present, Defendant was found in possession of a loaded Glock Model 43, 9mm pistol, and $2,395.00 in United States currency. (*Id*. at ¶¶ 33-34). Cocaine and

various items of drug paraphernalia were also recovered during execution of the search warrant.  (*Id*. at ¶¶ 35-37).  The PSR details events on June 24, 2021—a few weeks before execution of the search warrant—involving a shooting and recovery of a firearm with a fingerprint matching Defendant's.  (*Id*. at ¶¶ 24-30).

Defendant is 27 years old.  (*Id*. at 2).  Defendant was previously convicted on January 30, 2020, in Monroe County Court, of Aggravated Unlicensed Operation in the first degree, a class E felony, and was sentenced to 120 days imprisonment and a $500.00 fine.  (*Id*. at ¶ 39).  Additionally, on December 9, 2013, he was convicted in Monroe County Court, of Attempted Criminal Possession of a Weapon in the second degree, a class D felony, and was sentenced to two years imprisonment and two years of post-release supervision.  (*Id*.).  As part of his plea, Defendant admitted he knew of these prior convictions and that the prior convictions were punishable by a term of imprisonment exceeding one year at the time he possessed the Glock handgun.  (*Id*.).  Defendant's criminal history dates back to when he was 16 years old, and includes repeated violations of post-release supervision.  (*Id*. at ¶¶ 66-72).  The PSR reflects four orders of protection entered against Defendant during 2021, involving two different individuals.  (*Id*. at ¶ 76).

The plea agreement contemplated a Sentencing Guideline range of 37 to 46 months based on an offense level of 15 and a criminal history category V.  (Dkt. 10 at ¶ 13).  The plea agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and called for an incarceration sentence of 72 months—what was believed to be an above-Guidelines sentence—in consideration for the government's agreement to forego prosecution of a violation of 18 U.S.C. § 924(c)(1)(A)(i) and dismissal of separate

charges pending related to the June 24, 2021 incident.  (*Id*. at ¶¶ 14, 25).  Additionally, it was agreed that Defendant would not be prosecuted separately as a violent felony offender in state court for the offense conduct.  (*Id*. at ¶ 25).

Because the PSR concluded that the firearm was capable of accepting a large capacity magazine, the offense level was higher than contemplated by the plea agreement—21 as opposed to 15, with a resulting recommended incarceration sentence of 70 to 87 months.  (Dkt. 18 at ¶ 81).  On February 11, 2022, the undersigned accepted the Rule 11(c)(1)(C) plea agreement, and sentenced Defendant to 72 months in prison with three years of supervised release to follow, agreeing with the Sentencing Guideline calculations set forth in the PSR.  (Dkt. 20; Dkt. 21; Dkt. 22; *see* Dkt. 32).

Defendant is currently housed within the Bureau of Prisons ("BOP") at Hazelton United States Penitentiary with a scheduled release date of October 5, 2026.  *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 15, 2024).  According to the Abbreviated Supplemental Presentence Report, Defendant has been cited for two disciplinary incidents while incarcerated (Dkt. 27 at ¶ 7), and he has earned 108 days of good time credit and completed a drug education course (*id*. at ¶¶ 6, 7).

Because of the criminal history amendments to the Sentencing Guidelines, Defendant's criminal history category is reduced to IV from V, and the recommended incarceration sentence under the Sentencing Guidelines is now 57 to 71 months.  (*Id*. at ¶ 5).  Defendant argues that his sentence should be reduced because the sentence he is currently serving is above the new Sentencing Guideline range.  (Dkt. 31 at 2).  Defendant cites to programming that he has taken or intends to take while incarcerated in support of

his motion, as well as his work in the kitchen as a dishwasher.  (*Id*. at 3).  The government

argues against any reduction in Defendant's sentence, citing to the nature of the offense of

conviction, Defendant's criminal history, and his disciplinary history.  (Dkt. 28 at 4-9).

## II.    <u>LEGAL STANDARD AND ANALYSIS</u>

Pursuant to 18 U.S.C. § 3582(c)(2):

> in the case of a defendant who has been sentenced to a term of imprisonment
> based on a sentencing range that has subsequently been lowered by the
> Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the
> defendant . . . the court may reduce the term of imprisonment, after
> considering the factors set forth in section 3553(a) to the extent that they are
> applicable, if such a reduction is consistent with applicable policy statements
> issued by the Sentencing Commission.

Pursuant to U.S.S.G. § 1B1.10, a court "may" reduce a defendant's prison sentence where

the Sentencing Guideline range is reduced pursuant to Part A of Amendment 821, as in

Defendant's case.  Application Note 1(B) provides that a court "*shall* consider the factors

set forth in 18 U.S.C. § 3553(a) in determining: (I) whether a reduction in the defendant's

term of imprisonment is warranted; and (II) the extent of such reduction. . . ."  (emphasis

added).  It also provides that a court "*shall* consider the nature and seriousness of the danger

to any person or the community that may be posed by a reduction in the defendant's term

of imprisonment in determining: (I) whether such a reduction is warranted; and (II) the

extent of such reduction. . . ."  (emphasis added).  And it provides that a court "*may* consider

post-sentencing conduct of the defendant that occurred after imposition of the term of

imprisonment in determining: (I) whether a reduction in the defendant's term of

imprisonment is warranted; and (II) the extent of such reduction. . . ."  (emphasis added).

In other words, while post-sentence rehabilitative efforts may be considered by a court,

they are not required to be considered (unlike the § 3553(a) factors and dangerousness risks).

Here, the Court has considered all the relevant § 3553(a) factors, including the nature and circumstances of the offense and the history and characteristics of Defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to afford adequate deterrence to criminal conduct, to protect the public from further crimes of Defendant, and to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the newly calculated Sentencing Guideline range; the policy statement set forth at U.S.S.G. § 1B1.10 and the relevant Application Note; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  The Court has also considered the dangerousness risks associated with any reduction in Defendant's prison sentence, and while recognizing that it is not required to consider it, the Court has also considered Defendant's post-sentence rehabilitative efforts along with his disciplinary infractions while incarcerated.

Given the underlying nature of Defendant's convictions, coupled with his criminal history, the Court continues to believe that the 72-month prison sentence was reasonable, appropriate, and sufficient but not greater than necessary to comply with the objectives of sentencing set forth at 18 U.S.C. § 3553(a).  Defendant was involved in the ongoing distribution of a dangerous illegal substance, and as Defendant himself acknowledged at his sentencing, he "had a gun to protect [himself] from the streets because they are very

treacherous" (Dkt. 32 at 12)—particularly when one is involved in the type of criminal activity that Defendant was engaged.  Defendant has spent his adult life (and before that) involved in dangerous, criminal activity, with serial violations of post-release supervision conditions.  The Court is hopeful that Defendant meant what he said at sentencing, and that when he gets home from prison, he intends to "really be with my family and get a job and a career job, and just stay away from the streets because anything could really get you in the streets." (*Id.*).  But Defendant's history to date warrants the prison sentence that was imposed, and the reality is that the Sentencing Guidelines were not the driving force behind the sentence here, but rather the relevant factors set forth at 18 U.S.C. § 3553(a).  Moreover, the sentence imposed is just one month higher than the newly calculated Sentencing Guideline range, and the sentence imposed was agreed upon, in part, to reflect the government's forbearance on pursuing other charges.

III.   **CONCLUSION**

For the foregoing reasons, Defendant's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) (Dkt. 25) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      April 15, 2024
            Rochester, New York

- 6 -